243100 Midvale v. Zuniga. Mr. Cosgrove. Good morning, Judge. Good morning, panel. Are you ready? Yes. Okay. The issue before the panel is a straightforward one, which is when did Midvale have the information necessary to get to the court? So I mentioned that question, but before we get there, can I ask just a question about jurisdiction? So there were cross motions before the district court about whether Midvale had a duty to indemnify in addition to a duty to defend, and the district court said it would not decide those questions and denied both. Doesn't that mean that there still is pending before the district court the question of having resolved the claims for indemnification? I don't think there's been any briefing on that issue before this panel, but in response— No, no. I was asking about is this an appeal from a final judgment if, in fact, you know, the district court granted partial summary judgment on the duty to defend, but there remain the claims for indemnification that have not been resolved? Right? We don't have a 54B certification, right? Right. So you're saying that this is supposed to be from a final judgment, so that's my question. Aren't there more claims pending before the district court? Going outside the record, I can say the underlying case that gave rise to the litigation has been resolved. That is, the legal litigation has been resolved. So at this point, the issue before this panel will be dispositive of whether the duty to defend, duty to indemnify— So that means that you've abandoned the claims for the duty to indemnify before the district court? No, the other— I think you're the defendant, I guess, but the plaintiffs have abandoned the claims for a duty to indemnify? They have not been abandoned insofar as the issue of whether there's a duty to indemnify, whether or not the disclaimer is timely, whether the disclaimer is enforceable as a matter of law, is still the issue before the court. And the decision by this panel in respect to that question will decide all the issues that are left in this case. There is no additional issue that has to be decided beyond the issue of whether the disclaimer was timely, because, quite frankly, if the panel says the district court erred and the disclaimer was untimely, that's the end of the discussion. But if the panel comes back and says the disclaimer was timely, that's the end of the discussion for the respondents. Well, yeah, I understand that. You think that the question about whether the disclaimer was timely resolves both the duty to defend and the duty to indemnify. But the district court did not think that, right? The district court said the parties don't raise any arguments separate from those regarding the duties to defend. However, these duties are distinct. And then it says the question is not friendly before the court because the parties have not presented any information as to liability determinations in the Zuniga action. Accordingly, the mid-bail motion and cross motions are each denied insofar as they seek declarations regarding mid-bail's duty to indemnify the parties in the Zuniga action. So it just seems to me that there's still something more for the district court thought there was something more to do, right? This is a partial summary judgment determination and not a full resolution of the case. Judge, I don't think that's the case on these facts for the simple reason that if the disclaimer is ineffective, then the only issue is what the indemnity allotment for the million-dollar policy might be. Okay. So I just want to say sometimes when this happens, when there seems like there might be something pending before the district court, we ask the parties to provide a letter confirming that any pending claims have been dismissed with prejudice or that they're not seeking anything more from the district court. If we did that, do you think both parties would say that that's the case? I mean, I think the stipulation the parties could work out would be if the court rules the disclaimer is effective as a matter of law, then there's no duty to indemnify or defend on a record. Yeah, but that's saying that you will drop the claims depending on what we do. But what I'm saying is we can't exercise appellate jurisdiction unless there's nothing left before the district court. So you'd have to drop – the claims would have to be dropped before we issued a decision, right? Judge, I think counsel and I could probably work that out in advance. We discussed about that by order. All right, so anyway, so you're talking about the timeliness. Why don't you go on to that argument? Yes, Judge. I think that the case law makes clear that the issue for disclaimer and the timeliness of a disclaimer is when the insurance company has sufficient information in its possession to render a final cover decision issued with disclaimer. Here the district court was quite clear in its factual findings that the relevant date in this case is December 9, 2021, when Middell comes into possession of an RMG report, which is referenced in the appendix, referenced in the record. Well, it's not whether you have all the information, because if you sit around and don't open your mail or don't pay attention to what's going on, you can't – and somebody brings it to your attention three years later, you can't say that that's timely, right? So the question is if you are acting diligently during that time. Well, Judge, I think – first of all, this is not a three-year situation. This is a 94-day –  The constructive notice, I think, is an issue. And in this case, I think we have in terms of the timeline on this. And again, the time period we're talking about is – The time period we're talking about is there's a notification of the Zuniga action, and then there's a two-month investigation, and then there's a report that you get. And then a month after that, there's a disclaimer, right? All of which is occurring during the second wave of the pandemic, during Christmas, during Thanksgiving, during New Year's. So this is not a situation where years passed and all this time the carrier was doing nothing. I mean, the carrier acted reasonably in this case by retaining an investigator to go out and find out what the public records – If all you had to do was determine whether the building was a multi-unit apartment building, first of all, why does it take two months to figure that out? And then once you know that, why does it take another month to decide that that is the basis for deciding that it's a multi-unit apartment building? Because I think the issue in this case is obtaining records – certified records that are part of the record before this panel that indicate that the records confirm when exactly – what the building was. The district court, in its ruling, effectively said that in the modern digital age we live in, you could do a Google search, you could do a walk-by inspection. But quite frankly, if this was a trial case, that would not be admissible evidence. I'm sorry. I think we might be talking past each other. And first, I also want to just welcome the Benjamin Cardozo High School here. We're thrilled to have you and hope that you find the argument interesting and educational. And I'd also remind counselors here that they need to be on their best game so that they show future lawyers what good advocacy looks like. I think the question we're trying to figure out is what is your burden in justifying a delay in disclosure and whether or not you gave enough to offer it? Like, it seems to me that this whole question about, you know, whether or not you could do a Google search, et cetera, is basically parlance for they weren't persuaded by the reasons that you gave. And so I think if you concede, which I think you do, that it is your burden to justify the delay in disclosures, what was before the district court that you think is so slam dunk that it had – that it was incorrect for the district court to say, you know what, you didn't justify it? Well, Judge, I'm not certain I would agree. Okay. Well, then tell me how my question is wrong. That's fine. Yes, Judge. But, like, I just want to make sure we're not talking past each other. I don't think the issue before the court is how the investigation was conducted by the insurance company in respect of how it got the information that's indisputable in the record that led to the disclaimer. I think the fact is we're talking about a 90-day window here in total. And the time a letter comes in that does not – So you just want us to say per se as a matter of law that 90 days is okay? No, Judge, I don't think – I think the court – So I get it, and I'm actually not trying to put words in your mouth. I'm trying to figure out, like, what is the error that you think we need to correct here? I think the error made by the district court was focusing on the time from the notice of claim until the disclaimer on January 6th, so that October to January 6th timeframe, as opposed to the timeframe that's relevant, which is the 28 days between the time – Well, the district court says both, right? The district court says I think that you have noticed when you get notice of the claim because you could have just – because now that you know the address of the building, it's easy to look up that it's a multi-unit apartment building. But even if you could have a two-month investigation, once the report comes back that says it's a multi-unit apartment building, it's unreasonable to spend another month before you disclaim, right? So the district court says both of those things. And so – and why is it erroneous for the judge to have not been persuaded by whatever reason you think you gave for the 28 days not being too long? I think my time has expired. May I answer the question? Go ahead. Okay. So I think the issue is the district court focused on the wrong fact, which is to say if you look at the record, search the record, when the claim comes in there's no indication that this is a multi-story residential building. And to your point, Judge, in respect of the evidence, it is not admissible evidence to say I walked by the building and it looks like a multi-story residential building. I did a Google search that appears to be the case. To disclaim coverage does not require admissible evidence before a court, right? But in this case the carrier issued a reservation of rights on that issue, then finalized this investigation by getting what is admissible evidence, which is the certified records, which came into their possession on December 9th, and thereafterwards it was claimed within 28 days. Certified records from – so part of the problem is we don't have this report that you took two months to compile in the record, right? We have the records that are Exhibit C, I think, to the Statement of Material Facts, which is in the record, which is the Department of Building Records. And if you look at those records, it indicates they were downloaded by the Department of – from the Department of Building Records site on November 29th, 2021. There's a date stamp right on the top of those things. Okay, so if that's true, then why isn't it that you get notice of the claim by November 29th apparently – so you could look up the address that looks like a multi-unit apartment building. By November 29th apparently you have the official record that confirms that it is. So why is it that the report is not finished until December 9th and the disclaimer doesn't come until a month after that? Well, I can't speak to what the investigation company – why it took 10 days over Thanksgiving to write a report, but the fact is – Okay, it wasn't transmitted to you until December 9th. December 9th is a transmittal date. That's in the record. Okay, Steve, when you think that you should have two months to do an investigation, the reason for the time is to do the investigation. So when the answer comes back, yes, we've confirmed it's a multi-unit apartment building, why isn't it your obligation to disclaim right then? Well, Judge, I think under 30 days to commence a Federal lawsuit and draft letters accordingly on January 5th, the lawsuit gets filed on January 6th over a Christmas and New Year holiday, I think it's a pretty reasonable time period. You don't have to file a lawsuit to disclaim, you just have to send a letter. You can do it either way, Judge. Okay, but your answer was you can't file a lawsuit in 30 days, and the response might be, well, you can write a letter in a few minutes, I would think. Respectfully, I don't think counsel can write a letter in a few minutes that would be legally sufficient. In this case, the record indicates – Let me ask the question a different way. What do you think is your justification for the 28 days? What is your best – is it the holiday? Is it it just takes time for lawyers to get around? Because what I am hearing is an argument is we know that 30 days is a number that we have been given before, and this is less than 30 days, so therefore it is per se okay, is what I think you're trying to get us to say. Is that what you're – No, Judge, because I don't think any court has ever said that there's a per se rule as to when a disclaimer must be timely or not. Okay, so what is your justification for 28 days? I think the record is silent on that, as in this record before this court. And it is your burden, so if the record is silent, then why was it unreasonable for the district court to decide that 28 days is not reasonable? Why don't any case law that I'm aware of that says on a fact pattern like this, 28 days is per se unreasonable? But it is your burden, right? So what is your reason for why 28 days is reasonable? I think there are the four factors we've talked about, which is, one, you're talking about the information coming into possession, you're talking about the carrier making a coverage decision on that information, the carrier authorizing counsel to take certain steps, whether that's drafting a DJ or drafting a disclaimer, and you're talking about a reality of the second wave of the pandemic when combined with the court can take judicial notice of that fact, and also the Christmas and New Year's holiday. That 28-day window all happens during that time period. Those are facts. Those judicial notices is an obvious remedy in respect to that. Those are things that happen. Okay, so when it says what so, you know, there is case law, which is that the second department, we have this case staff that says what's most important is not the precise length of the delay, but the insurer's explanation for the delay. And so while an investigation could justify a delay, you know, in that case, they didn't show that they did an investigation. So the explanation that you're saying from the insurer is not that it took that time to do the investigation, but that once you got the information on December 9th, it would reasonably take 28 days to put together a disclaimer? Yes, I think. Because of the holidays. I think all of that. That you needed to prepare a lawsuit to be filed simultaneously with a disclaimer. I think all of those things are part and parcel of that 28-day window. Can I ask, I know we're focused on the 28-day window, but I want to make sure I understand this first chunk of time. The letter comes in on October 4th. Is there anything in the record that tells us when your client actually contracted with an investigator? No, Judge, there is nothing in the record to that effect. So how could the court, I mean, I think the cases are clear that you get time for a reasonable and diligent investigation, but how could the court conclude that that investigation was reasonable and diligent if there's no information about when it was commenced, what steps the carrier took to, you know, get it started? I'm puzzled about that. That's a fair question. I think what we do know in the record is that November 23rd, a letter by counsel was issued that disclaimed coverage to D&G and offered a reservation of rights defense to Aravelos in respect of the lawsuit that begat the whole incident. Right, but you're telling us that we should ignore that two-month period. I mean, that reservation of rights is sort of, I don't know what it, how does that move your claim forward? Right. It doesn't, Judge, insofar as the district court didn't say, in its opinion, that because the first 45, 50 days from October 1st, 2nd, 3rd, 4th up until November 23rd was untimely, everything that follows after that, like a fruit-of-the-poison-tree type thing, was also invalid thereafter. Yeah, I'm not talking about fruit-of-the-poison-tree, and I think we're on de novo review here, right? Am I misunderstanding that? I believe that's right. Right. So in our de novo review, if we think that the case law says you look at when the claim was submitted, but you don't start some sort of clock, whatever the time period is, during a period of diligent, reasonable investigation, I would think that we would need to know whether there was a reasonable and diligent investigation, and I'm not seeing anything that tells us how it was conducted when it was initiated. Did they ask an investigator to check this out on November 23rd when they sent their reservation of rights, in which case there was a month and a half with no action at all? That would be really problematic, right? So I guess you don't have an answer. You're acknowledging that there is nothing in the record. There's nothing in the record, Judge, is what I would say. Okay. I might have answers, but they're not in the record. Okay. Okay, so. So that would be. Right. In respect of November 23rd, I mean, I think we can reasonably say, because we're all lawyers here, that it does take time for lawyers to draft documents. So we know there was some period of time leading up to the November 23rd letter where a letter was drafted. The client indicated what it wanted. The lawyer drafted the letter. The carrier then ratified the letter. That does take some period of time. We all know that as a matter of fact. Yeah, but none of that is advancing the investigation. That can happen on a parallel track. So I don't think that you really get to sort of push the stop button on the stopwatch while you're writing a reservation of rights letter. That's true, Judge. And I think there are two different time periods in this case. I think Your Honor is correct on that. There's that first window from October to November 23rd where the first reservation of rights  Well, is it really November 23rd or is it December 9th? Well, December 9th is when the information comes into possession.  And that's when the carrier then acts thereafter within 28 days. I think that's, to me, that is the reasonable aspect of the carrier's behavior, is the 28 days that pass from the time that they get the information.  So maybe the unreasonable aspect is before the 28th, before that period. Well, I don't think that's where the district court held. I'm not asking. I mean, we're de novo, right? Yes, Judge. Okay. I'm just focusing in terms of what's in the record. I think the factual findings made by the district court in respect to that don't focus on what happened in any large scale during that first 45-day window, other than to say that the carrier should have done the investigation in some different way by relying upon things such as Google searches and things of that sort. Well, maybe you should have. So a moment ago you said that the record reflects that the investigator downloaded the official records in November, but you didn't get the report until later in December. Where was it downloaded from? Just from ACRIS? I believe it was downloaded directly. I don't think it's in the record, but I believe it was directly downloaded from the Department of Buildings at their physical location. So somebody went to the Department of Buildings. Someone went to the Department of Buildings and got certified records. They could have accessed the official records from ACRIS, right? I don't believe they were certified that way. The records in this case were certified. Okay. But so if you send the letter in November reserving your rights, you could have said this appears to be a multi-unit apartment building and therefore it's subject to an exclusion. That is in the letter, Coach. But we will wait to officially, or like we expect to disclaim when we get the official record. Well, the November letter does say that the mobile story residential exclusion is a potential bar to coverage. That's in that letter. Then the investigation continues. So you think that that counts as a disclaimer? I don't because I don't think the carrier had sufficient information at that point to disclaim coverage because surmise, conjecture as to what a building looks like, I mean in New York, I think it's a difficult basis upon which to say something as fact specific as to whether or not, it's not a multi-story building, but a multi-story residential building, which is a very specific subset. I mean it could be a multi-story commercial building. It could be a multi-story industrial building. I mean, you know, if you have the address, you can look up an image of it and then you can get the ACRIS record. How likely is it that it's going to turn out not to be a multi-unit residential building? I believe the building was under construction, Judge. So I don't think you'd know what the building was because it wasn't completed. ACRIS would say what was under construction, wouldn't it? I think it tells you the types of buildings. I don't think it provides dispositive information to what the building actually is. Okay. Can I ask one other question, which is the district court says at the end of its order that to the extent that the default judgment is inconsistent with its order, it's vacated. What do you think that means? So on the one hand, it might mean that it's only restricted to the parties that are litigating, but then it does talk about how you can't have inconsistent judgments between the litigating parties and the defaulting parties. So has it vacated the default judgment even as to Aravalos because it was defaulting or has it only vacated it as to the litigating parties? I was not really sure what it had done. The way I interpret a decision on it, maybe counsel has a different perspective, is that the courts of the disclaimer to Aravalos was also ineffective as a matter of law as being untimely. Notwithstanding the prior decision saying the disclaimer was in fact effective and the multi-source exclusion plot. If the defense applies only to the defaulting party, you would also not be – the defaulting party gets the benefit of that if it's litigated. But what's good for the goose is good for the gander, and in respect of Aravalos and D&J, the disclaimers were the same day. I think that's what the district court was suggesting in respect of that. Okay. All right. Well, you've used your time for rebuttal, so we'll hear from you again, but let's turn to the athlete, Mr. Maxwell.  May it please the court? Ryan Maxwell, Horowitz Fine for Defend Appellee, D&J Construction, New York, Inc. I don't want to rehash too much of what was – Well, can I just start with this jurisdictional question? Sure. So like I said, as I read the district court's opinion, the district court said I'm not going to resolve the issue of the claims for indemnification. I'm going to do that later. So we only have a partial summary judgment ruling, and we have pending claims before the district court. Doesn't that mean that this is not an appeal from a final judgment because there's more left for the district court to resolve? Well, as counsel had indicated previously, the underlying case has resolved, and at the current moment there is really the only – When you say the underlying case, the underlying case of this appeal, or do you mean the state court proceeding about liability? There was a settlement in the state proceeding which involved payments of insurance. Okay, but then as I read the district court opinion, what the district court would expect you to do is take that judgment back to it and decide whether it's a duty to identify. But you're saying you don't care about the duty to identify because you worked out what you're going to pay to settle that litigation. I believe this appeal, the resolution of this appeal by this panel will resolve. So if we asked you just to assure us of your jurisdiction to make sure that you've dismissed any pending claims before the district court with prejudice for indemnification, you would do that because you don't see any – you don't have any interest in pursuing those claims further. Is that right? I believe so. I'd have to review the order on this issue to make sure that I understand that. Okay, well, we might ask for that by order after the argument.  Why don't you tell us about the timing of this question? Yes, so there's two distinct periods of time we've already touched upon. There's the October 4th through November 23rd or December 9th timeframe. That November 23rd letter that went out to my client, D&G, as to the multi-unit residential exclusion, it was a mere reservation of rights. And as counsel conceded, it was not a disclaimer of coverage by any means. It did indicate, you know, essentially that they were aware that this exclusion may potentially apply. Well, so then what's wrong with that? So why do we say that that's unreasonable? Let's say they send the letter. Initially they say, yeah, it looks like this exclusion might apply. So we're letting you know at this stage. We want to get the official records to confirm it, but, you know, we're letting you know as soon as possible. Why isn't that a reasonable way for the insurer to behave? The unreasonable portion of it is essentially the record is devoid of any explanation for what transpired for the entire period of time until that November 23rd letter. Yeah, and so actually I raised to Mr. Cosgrove that we didn't have this report that took two months to generate, but he pointed out that we do have the official records that were downloaded. So why couldn't it be the case that they had an initial tentative thought that it's probably a multi-unit residential building, and then they asked someone to go pull the official records from the Department of Buildings, and that's what takes the time. I mean, the problem is that the record does not have any of that explanation. There's just no indication. All right, well, put aside that question. If that were the explanation, would that be a sufficient explanation that would make this a reasonable amount of time? Could you repeat it? I'm sorry. So the idea would be that they say, you know, on November 23rd, it looks like this is a multi-unit residential building, so we're preserving our rights under that, and we're going to confirm it, and then the additional time is having somebody go to the Department of Buildings and get the official certified record to confirm that that's, in fact, what it is. There was a lot of discussion during the prior time period, argument time, with respect to certified records or dispositive evidence of the types of materials you would need to confirm that this building was a multi-unit residential building. That is not the standard for insurance disclaimers. Essentially, the investigation and what you determine to be the facts as an insurance company, when you have knowledge of a ground to disclaim, you have to do that in a timely manner. So it's your burden, initially at least, to demonstrate an absence of material fact on this issue, and why isn't the nature of the investigation a material factual issue? I mean, how do we know if it was reasonable if we don't know what it's about? So why isn't there a material issue here? I'm not sure I understand the question. Okay, you agree that at least initially you need to show that there's an absence of material fact on the issue of reasonableness. Is that right? That's not my burden as the insurer. No, it is the insurance burden to meet it, but you need to show that there's an absence of material fact. On summary judgment. In order to get summary judgment. Correct. Okay, so why is the nature of the investigation not a material factual issue? The record is devoid of any discussion of what happened during the investigation. There's argument that's been made that there was an investigation that was conducted between October 4th and November 23rd. So you're arguing because it was summary judgment, this is when they needed to put up the evidence and they didn't, and therefore the only thing that has is your allegation saying that they didn't meet it. Correct. There is nothing on the record that shows that any steps were taken. Can I jump in on the record? So we know from the record that there was an investigator, and we know because the official certified documents are in the record, we know that at least something the investigator did was get the certified documents from the Department of Buildings, right? So why isn't that enough of an explanation to say maybe what the insurer was doing was reasonable? They sent you the initial reservation of rights and then they dispatched somebody to the Department of Buildings to get the certified records to confirm the status of the building. As Your Honor mentioned before, those records are publicly available through ACRIS, and so you don't need a certified copy of the records to do that due diligence in taking a look at the nature of the property. Okay, so you think we should decide that. Would it be unreasonable to want the official certified record from the Department of Buildings? Like doesn't that mean that actually they're being kind of responsible by making sure that they have the official record? I don't see a problem with obtaining a certified record to confirm. I guess my point is that there's no indication when that type of step was first taken. There's waiting from October 4th until November 23rd or beyond. I believe November 29th was the date on the Department of Buildings record. Waiting that period of time before you actually went and pulled that information is unreasonable if you didn't take steps to do that beforehand. That period of time, you know, there's... Sorry, what are you saying is unreasonable from October 4th to November 29th? They could have pulled those records at any point in time between October 4th and November 23rd. We have records indicating that they were pulled November 29th, which is actually after the letter that went out reserving rights on multi-unit residential exclusion. And so what I'm saying is there's no indication in the record of any steps that were taken between October 24th and sometime... Sorry, October 4th and sometime in November when they pulled these records. The district court... One month would not be an unreasonable amount of time, right? If steps were taken. The problem is the record is devoid of any steps that... any indication that there were steps taken to begin with. Okay, but as I said, it's not completely devoid because what we do have is an initial reservation of rights in November, and then we do see that there was an investigator who pulled the... who went to the Department of Buildings and got the official certified records. It sounds like you're kind of saying, well, you know, waiting to do that is not inherently unreasonable, but you don't need this much time to do that. Is that what you're saying? Correct. And if we could move to the second period of time. The disclaimer here was the...at least Midvale's position that the disclaimer was the filing of the declaratory judgment action. That is not entirely correct. It's actually...it would be written when notice is received, so it would be when service of process was completed with respect to a declaratory judgment action. Here, D&G was never actually served with process. And so January 6th is not the actual period of time when the disclaimer was issued on the multi-unit residential exclusion. But do you agree that it's customary to provide the written notice by filing an action? But you're only put on notice when it's served, when you actually receive notice. Why aren't you on notice when the letter comes? Which letter? The disclaimer letter that came on the 5th rather than the suit that was filed on the 6th. The January 5th letter was discussed specifically coverage for Erevalovs. Got it. It did not...it was not a disclaimer letter with respect to coverage for D&G as an additional insurer. Got it. But anyway, but if you're saying that actually the way written notice comes is by service of process of declaratory judgment action, doesn't that support Mr. Cosgrove's argument that actually before we could disclaim coverage, we need to be sure that we had documentation that would support an actual court proceeding? Well, you don't have to file a declaratory judgment action to disclaim coverage. You just need to issue a letter. Had they issued a letter with respect to... Okay, so it might be reasonable that they took the time to get the official documents in order to file the action, but you're saying they should have sent a separate letter earlier. If they were able to explain the 28-day delay from when they received the December 9th investigatory report and January 6th when they... Well, what about all the other things, which is let's say they get the official documents on December 9th and then we're in the middle of coronavirus and the holiday season and, you know, preparing a litigation? I mean, the first I'm hearing of any of these explanations for what was transpiring during the course of... Okay, I get that about whether they made the argument, but let's assume that there isn't a question about waiver or anything. Would that be an explanation that would explain the time period? Certain delays pertaining to the time period of when things happen. I think Thanksgiving holiday and Christmas, I understand. Those things do slow down processes. All right, but if we take out the period from Christmas to New Year's, then we have like a 15-day delay from when they get the report, right? So those particular time periods, and I would refer the court to the JET code decision out of the Court of Appeals. You know, the receipt of notice of a grounds to disclaim coverage, the delay in disclaiming coverage on a known ground, is unreasonable as a matter of law if the delay... You had knowledge of a grounds to disclaim before the onset of the delay. But in terms of days, JET code was a 48-day, right? JET code was a longer period of time. But JET code was a case involving, I believe it was a late notice disclaimer. It was the type of... It was obvious from the onset of... All right, but let me just... So we keep talking about it as 28-day delay, but you acknowledged that holidays might not count, that that's a legitimate reason. So if it were a 15-day delay from the time that they get the report, if we take out the holiday period, would that be unreasonable? So the problem here is that they had already issued a letter. They had essentially the letter put in place. It just needed to be updated to a disclaimer from a reservation of rights. So 15 days... So even then, 15 days you think is too long? Potentially. Potentially? We have to answer the question. I understand. I want to know what your answer is. Yes. Okay, well, I guess maybe you can help me then understand. I thought that cases like JETCO and Liberty Mutual turned in large part on whether or not the delay was unexplained. And so they said... They set, like, floors. If the delay is unexplained, then 48 days is unreasonable as a matter of law. If the delay is unexplained, 37 days is unreasonable as a matter of law. So I understood your argument to be that it wasn't explained and we're not fiddling over line drawing as to whether or not 15 days or 28 days, because whatever the day is, it was unexplained. So now it sounds like you are conceding that there is some per se protective window. So help me understand how we harmonize these cases, or how you believe we should harmonize these cases. Our position is just as you described it. Our position is that there is no explanation in the record that was provided. And that is essentially the JETCO case discusses the lack of an explanation. It makes delay unreasonable as a matter of law. That is our position on how this... Okay, and so maybe your argument is that they should lose on summary judgment because they didn't provide the following explanation. But then I said, well, what if this was in the record and they had adequately presented this argument, which is we only knew tentatively that it was a multi-unit residential building as of the reservation of rights, and we needed to dispatch somebody to get the official certified record so that we would confirm it. And then once we got that, the only reason for the further delay was the holiday season and the coronavirus and things like that. And I asked, would that be a reasonable explanation? And you said, well, maybe, maybe not, right? The problem I have is, I mean, we're dealing in hypotheticals here. The record doesn't have any explanation in it. So I can't say when the first step was even taken to investigate any of these issues. There just is no indication in the record before this Court that any steps were taken from October 4th through. And I'll grant you that the Department of Buildings records are in the record on appeal. Do you agree that those documents reflect that somebody went to the Department of Records and got certified records? That's what they would look like, yes. So then we can say from the record that somebody did go to get the official certified records. So that is one step that would say. Or somebody made a phone call. We really have no understanding of where those records were pulled and who pulled them. Well, in going forward, we have no information about the time frame. We have no information about whether the claim sat latent and unaddressed for a month and a half, and then the day before November 29th someone took a step to get those certified records, or whether an investigator was hired immediately but was backed up. And we just don't know. That's correct. And my understanding of what happened is just that. I mean, I don't have an explanation in the record. It's never been explained to me, you know, why it took so long for that to happen. And, you know, our position is that it does appear that the claim sat latent from October 4th until at least some point in the middle of November. And we've been sort of adding, for argument purposes, we've divided this into these sort of two discrete blocks. But aren't the cases a little more holistic about looking at the time period? The question of the reasonableness and diligence of the investigation isn't sort of carved off from the time period post-investigation. It's all of a piece. I agree with your characterization. You know, the... The ones that deal with, the ones mostly that deal with the time from when you could have disclaimed are the ones where the disclaimer, the basis for disclaiming was evident from the notice itself, usually because it was untimely, right, or the tender request. That's not really a question. You're right. I'm just talking. I'm just trying to figure out why we're acceding to this very discrete division. I think it's a... We've kind of focused on the two time periods because it's more of a matter of convenience. I do think that, holistically speaking, when you're talking about an insurance investigation through the point of disclaimer. Well, I mean, that's not why, right, isn't it? Because the JETCO case says that a matter of law, an explanation is insufficient as a matter of law where the basis for denying coverage was or are or should have been readily apparent before the onset of the delay. And they would say that they didn't know until they got it done, right? I mean, we can debate whether or not we should be looking at it more holistically, but that's their argument for why we break it up. JETCO also includes language indicating that you have to conduct a prompt, diligent, thorough investigation. Totally get it. I mean, totally get it. But, like, you said that you didn't understand why as opposed to the holistic matter. I mean, they put forth an argument that we can reject or not reject, but I think that's their argument. Their argument is that it wasn't readily apparent and, therefore, they don't get triggered by the insufficient explanation burden unless it was readily apparent and it wasn't readily apparent until they did their investigation. Well, and the district court did discuss in, you know, some of the arguments that were made with respect to the Google Maps images. Yeah, but that we're just debating whether or not it was reasonable, right? But those are just steps that could have been taken in order to determine earlier. Not disputing that. Just want to make sure that we're grappling with the hardest questions we have to deal with. I know I'm over my time. Before you sit down, can I just ask if you agree with Mr. Cosgrove about the scope of the vincitor of the default judgment, that it doesn't apply just to the litigating parties but also the defaulting parties insofar as the reasoning also applies to them? So D&G is a defendant in this case as an additional insured and also as a claimant against Erevalos. And as a claimant, we had the ability to contest a disclaimer of coverage to Erevalos. There was a default judgment motion that was filed and decided. We actually had argued against the default. It was still entered. But then when this decision was handed down, we essentially were able to invalidate the disclaimer with respect to Erevalos, which was inconsistent with the declaratory judgment. Right, so the district court. Sorry, the default. The bottom line is I vacate the district court judgment insofar as it's inconsistent with the summary judgment order, but because she also talks about the frow principle and the role of defaulting parties, we should understand that to vacate the default judgment as to them too. That's correct. Okay. All right, thank you very much, Mr. Maxwell. We'll turn it back to Mr. Cosgrove on rebuttal. I think the issues are pretty well briefed at this point as to what the issues before the court are, but I think ultimately the JETCO case law does support the idea that it's when the information comes in possession of the carrier that the time to disclaim in a reasonable fashion begins. The record is clear that the date where the information is unequivocally in the carrier's possession is December 9th. That's what the file notes say. That's what the trial court ruled. That's the relevant date. It's 28 days thereafter where the disclaimer occurs. That's reasonable under any precedential case law. Some of the case law that the court was talking about earlier, in terms of timeliness, the 90-day delays, things of that sort, are cases where the reason for the disclaimer is apparent. Most of those cases predate the 3420 amendments, and they talk about late notice, which used to be a defense, without material prejudice in New York. Those cases are pretty clear. The claim happened four years ago. The claim comes in now. It's clear it's untimely, right? That's a pretty straightforward fact pattern. That's not what we have here. If you look at the case law, there are very few cases in which the carrier had to conduct an investigation of some kind to determine a material fact relevant to the applicability of an exclusion, where the court then said that timeframe was unreasonable as a matter of law, especially when there is something that was happening, which is what happened in this case. But you're saying this is in the category of cases where you had to conduct an investigation to determine the fact? I mean, it seems like this case is one of the cases that involve a pretty straightforward fact, which is whether the building is a multi-unit residence, right? So it will be determined, yes. But it's not something you can just – I mean, on its face, if you get a late notice disclaimer or – if someone untimely presents a claim to you, the lawsuit was commenced in 2010, and you get a copy of the lawsuit in 2015, it's pretty clear it's untimely. That doesn't require a lot of work. But what I'm worried about is I think you're asking us to let the word investigation be used as a magic wand to justify any delay. And I think certainly the cases that have found a specific number have said that some sort of explanation was required. And I think what we are trying to figure out is whether or not we look at the three-month period, whether we look at the two-month period and then the one-month period, and whereas any of them were sufficiently explained in a way that makes us comfortable. And it was your burden to explain that delay. And the best that I have heard is, you know, it was a busy time of the year. And so, you know, we'll see where we end up on that. But basically your argument is it was a busy time of the year for at least those 28 days. Which I think 28 days is reasonable as a matter of law. I think that's consistent with the case law. Unless the panel has any further questions, I thank you for your time. Okay, thank you very much, Mr. Cosgrove. The case is submitted.